May it please the Court, my name is Brad Bodemer and I represent the plaintiff appellant John Sirridge. My client John Sirridge is entitled to have a jury determine whether Bar-S, his employer, terminated him because of his age. The law of the Ninth Circuit is very clear, sirs, that because the ultimate question of motive in a case like this is one that can only be resolved through a full record, that summary judgment should not be proper, would not be proper if there's any evidence from which one could find that there is a discriminatory motive. And again, because of this inherently factual nature of this inquiry, very little evidence is actually required. Mr. Bodemer, what do we do with the fact, as I understand it, you don't, your client doesn't dispute that at the, what is it, December 2000 meeting that he was essentially warned about his subordination and told that he would be terminated if he didn't cease his sniping at the, at the CEO, is that right? Don't dispute that the meeting took place in December of 2000. It did take place. The comments were made to him and the comments were received and there were no further reports of any sniping, to use your words, about Mr. Ewell from Mr. Sirridge after that date. To put it in context, you have a long-term employee who's promoted to vice president of sales, third highest position in the company in 98, all right? There have been animosity floating in the air between the president and the sales manager for some time with nothing ever stated to Mr. Sirridge. Was the president the same person who had promoted him and given him pay raises? No, it's, yes, the president. The president is the person, no, the chairman is the person that promoted him in 98. The president, who is Mr. Ewell, is the one that gave him a pay increase in December of 2000. At the time that the, in response to my letter alleging wrongful termination, we received a whole litany of stated reasons for termination that certainly would lead one to believe that this was a well-thought-out company decision. And they listed several things. They listed the, what they call open disdain for Mr. Ewell, which is the incident that you're referring to. They also listed performance deficiencies. They also listed the fact that his performance during the Listeria crisis, and they also listed the issue of a cost savings measure, okay? But I assume that the court should properly take a letter by counsel after the termination when the employee hires counsel with a certain degree of, how shall I put it, healthy skepticism that what we have here is basically a lawyer who is trying to put the best face on it for the client. I guess what I'm more concerned about is the discovery evidence. I mean, did witnesses testify to the fact that your client had been making critical comments for some time about Mr. Ewell? Yes, Your Honor. But again, through affidavits that Mr. Day, who is the admitted decision maker that we learned through discovery, indicates he never saw and indicates that he couldn't recall anyone ever having shared any of those comments that Mr. Seerage made to other coworkers as having been relayed to him. Mr. Day also indicated that, because I ask you, what factors went into your decision? What reasons did you have for terminating him? And he acknowledged that the fact that there had been the incidents between Mr. Ewell and Mr. Seerage and this kind of air of comments that were being made may have been, was not a positive, I think was to use his words. But he could not even, on my questioning, couldn't come forward and actually say, yes, that was a factor. Well, I don't mean to focus just on the comments, but it seems to me that even if you get over the prima facie case with regard to establishing a prima facie case of age discrimination here, you've got some pretty tough evidence in order to demonstrate a serious issue of material fact on pretext. Perhaps you could explain what your response is to the fact that in the middle of the Listeria crisis, you know, your client essentially goes off to visit some of his key sales accounts after he's been told that all hands need to turn to to address what turned out to be a very significant recall in the history of the company. Yes, sir. Let me address that. Because on the Listeria issue, the Listeria crisis, you have to first put it in context, that this was something that had been going on for some time. There had been notice of this issue for several weeks before this fateful week when Mr. Sirage is accused of vacating his post. All right. Well, when was the recall decision made? I'm assuming that they came to a head when what the FDA said, you're going to have to pull this stuff off the shelf. What happened was there was the indication of an issue. The company responds, and this was going on for some time. Then there's a letter that they're going to suspend operations and everybody comes into Phoenix to meet and decide how to deal with that. It's during that week, Mr. Sirage leaves on a Monday afternoon and returns on a Thursday for two previously scheduled sales trips that he had advised President Ewell that he was going to attend. All right. He then gets back on Thursday and gets back in the fray. And the recall doesn't actually take place, and I can't remember, for some time later. So, I mean, this is over a long period of time. My argument, sir, is this is a post hoc rationalization for an otherwise discriminatory act. In other words, this is something that Mr. Day comes up with after the fact to say this is the reason, because he says this is the last straw. Wait a minute. After the fact, now you got me a little confused. As I understand it, when he was called in by Mr. Day, the CEO, the chairman, and told we are terminating you, wasn't he told that it was as a result of the fact that he had essentially abandoned the watch in the middle of this listeria crisis and that that was the last straw? Absolutely not. Okay. And that is the key, Your Honor. If this, I admit, if this was truly his thinking, you know, if he says, look, this guy has abandoned this post, and on that reason I'm going to terminate him, you know, that would be a legitimate non-discriminatory reason. But the point is, if he was that aggravated about this situation, wouldn't you expect him to have said something to the president of the company? Wouldn't you have expected him to say something to the board when he says I'm going to terminate this man? And wouldn't you have expected him to say something to John Searich following this incident? Wouldn't you have expected him to say something on his termination? None of that happened, Your Honor. But if your client wasn't there at the time when all the senior managers of the company had been called in under an emergency condition to turn to the listeria problem, why would he need to say anything? It was obvious that he wasn't there at the time when they needed him. Your Honor, before he left, he was asked to put together kind of an outline of a plan. And there's some discussion in the record about what he was really asked to do and what he did. All right? He gives that, and then he leaves on a Monday over the weekend. He leaves on a Monday afternoon and returns on a Thursday. And again, all the senior management continued to be there for some period of time. So my argument is that if that was truly the critical factor, I still say you would have expected him to say something to Mr. Day, the chairman, to say something to somebody. It didn't even happen on his termination. On his termination, he's told it's a board decision. Mr. Day acknowledges it was not a board decision. It was his decision. And the only factor that he could indicate was this last straw being the abandoning of his post. And when I asked him directly about these other reasons that had been stated by the company, he couldn't come up. He wouldn't step up and say, well, yeah, those reasons did not factor into my decision. So when you have the stated reasons, the credibility of the stated reasons being called into question, that in and of itself can lead to an inference that there's been a discriminatory motive here. And I see I've got... I want to save some time. I'd like to thank you, Your Honor. Okay. Very good. Thank you. Mr. Deany. Good morning, Your Honor. May it please the Court, I am Raymond M. Deany, law firm of the United States. You know, Your Honor, this is not a... Judge Martone did exactly what the Ninth Circuit and the Supreme Court of the United States have instructed the lower courts to do with employment discrimination claims. Judge Martone very conscientiously identified that there was no genuine material fact issue in this case. And, Judge Tillman, you have hit the essence of this case. You cannot get over the fact that the Supreme Court of the United States has repeatedly held that there is no evidence of pretext based on that reason. The Ninth Circuit has repeatedly held that it does not demonstrate pretext that an employer doesn't sit down with an employee at the time and say, you're being terminated for this reason. In fact, a board decision is not a reason. But the Court needs to appreciate these people have grown up together in this organization. They were the founders of this company. They know each other inside and out. And Tim Day had expressed his dissatisfaction previously, as Your Honor has pointed out, in December of 2000 about John Siridge's leadership in this organization. He didn't have to say anything other than walking into that boardroom and saying, where is John Siridge at this moment of a most critical circumstance in our history of our business? And when he was told he was out visiting customers and knew that he had not completed the assignment that was given to him, and at that time turned to Bob Ewell and said, this is unacceptable. I'm reorganizing this company. And John Siridge and Mr. Stinn, who was the general manager of the plant in that circumstance, are not moving forward with this company. And it was for one reason only. He had abandoned his post. So, I mean, are you essentially asking us to look at the evidence and conclude that he was just trying to do it as gently as he could because of their longstanding relationship? Unfortunately, that's probably the case. It was, I'm not going to he knows my expectation. I've made it clear to him. This, as we pointed out to the court, we had people in management positions who were bypassing opportunities, in one instance, to hear a daughter sing in Carnegie Hall because of the seriousness of this. And John Siridge decides at that time to go see customers. We would be lucky to have customers at the end of this crisis. John Siridge was running. And so he was running from his responsibility. And that's what Tim Day expected of him. He doesn't have to sit down with him and say, John, as a senior vice president of this company, do you realize how irresponsible that was? That doesn't constitute pretext. It might have made the defense of the lawsuit easier if he'd done that. But I guess I thought that was pretty easy defense. I guess the other thing we can look at is the fact that he was trying to get him, I assume, to accept a severance package, which probably included a release of any claims that he might have against the company. Exactly right, Your Honor. That was the next document that was placed before. That was underneath the check. Absolutely. And also, Your Honor, with Mr. Stinn as well. In this litigation-oriented world that we had, of course, he's going to try and downplay the circumstances. But all said and done, it doesn't get over the pretext issue. He can't prove pretext. There's nothing false about this explanation. Counsel, he doesn't have to prove just pretext as to the reasons given. He can prove there were other discriminatory reasons. And one of the reasons is that he was trying to get him to accept a severance package. One thing that I'd like you to address is that the plaintiff's termination was timed to a reorganization where younger and fewer executives who were paid less were substituted throughout top management. Mr. Day gave slightly different versions as to whether the cost savings by hiring younger people was a reason for terminating the plaintiff. At one point he indicated it wasn't. As you stated, he indicated it was not. When there's a conflict of evidence as to an issue of fact, was cost savings by younger people to be effected, does that create a triable issue of fact so that the good district court judge was wrong? Your Honor, I don't think, first of all, that there was ever a statement by Mr. Day that he was trying to reduce costs to obtain a younger workforce. He was trying to achieve cost savings, no question about it. But I think Judge Baker... He was doing that by hiring people who were younger and paid less. I don't think there's any evidence of that. I think, Your Honor, he's referring to the ultimate replacement, Linda Boodman, who assumed the duty as president. And that was a candidate that... There was an overall $400,000 cost savings. $2 million, Your Honor, and that's the irony of this whole... This is just a complete red herring, because Mr. Day did say, and I think, Judge Beha, you just said it yourself, it was a timing issue about the reorganization. It wasn't the motivating factor as to why John Syridge was let go. He asked Bob Ewell in April to take out $2 million-plus of this company's operating costs. And he didn't target, he didn't direct any particular individual except to say, because of my dissatisfaction with John Syridge and Mr. Stin, they are not moving forward with this company. It was not a cost savings directed to take it out of the hide of John Syridge because of his age. Well, let me ask you an abstract question. Suppose he did. Suppose he said, I can hire younger people for less money. And it's not the matter of age, but it's a matter of money. Would that be a discriminatory reason? No, Your Honor. There's some corresponding relationship there. They specifically said, what's wrong with the company saving money? Unless you can prove age was the reason. Was there any offer to Mr. Syridge to cut his salary so that he wouldn't be more expensive than Ms. Borden? To cut the salary? No, Your Honor. This was purely an issue of leadership as a vice president of the organization. And based on the company's performance, by the way, Your Honor, that cost savings was evaporated because based on now superior performance, Ms. Boodman was paid more ultimately than Mr. Syridge. But you can't, based on that circumstantial evidence, and I think the Hazen paper case disposes of that, make an age discrimination claim. If I may, Your Honor, I would just like to turn to one other issue on the motivation. Motivation absent proving falsehood of the reason or that there was animus directed towards Mr. Syridge because of his age. Motivation is not a buzzword to insulate employment discrimination claims from summary judgment. And that's what Mr. Bottomer would have this court believe. And that has been specifically rejected by Chief Judge Schroeder in the Godwin case. It is very clear what the profile of a discrimination claim for summary judgment is, and there's not any evidence that Mr. Day made a decision based upon age animus or that the reasons were false. We believe that Judge Martone's decision was efficiently and well-reasoned and supports that there is no genuine issue of material fact in this case, and we ask that it be affirmed. Thank you, Your Honors. Thank you, counsel. Mr. Bottomer, I think you have a couple of minutes. Yes, sir. A little more than a minute. The Godwin decision, as well as many others of this circuit, make it clear that the plaintiff can carry his burden by showing either direct evidence of discriminatory motive or indirectly by showing stated reasons. The stated reasons are unworthy of credence. We have both in this case. In fact, I submit we have substantially more evidence of discriminatory motive and pretext in this case than in the cases of Perez, Godwin, Messick, and Lindell, as well as maybe others, all decided by the Ninth Circuit. And clearly, what you've been hearing is an argument as to the weight that should be given to the evidence, to the inferences that should be drawn from the evidence. And I submit, Your Honor, that that is for the jury to decide, not for the district court judge, and with all due respect, not for the court of appeals to decide here. Let me just address this kind of pretext. Let me address briefly the direct evidence of discrimination. Remember that the record shows that in December of 2000, just six months before Mr. Seary just terminated, Mr. Ewell, President Ewell, indicates to him that he should retire. And my time is running out. Go ahead. A couple of more things, Your Honor. In the context of preparing the succession plan, then there is a stated objective of the company for 2001 to implement the succession plan. In the context of preparing that succession plan, Mr. Ewell and Mr. Day referred to Mr. Seary as getting long in the tooth, a clear indication or reference to his age. Then when he is then in 2000 ---- Was that with him or was ñ I mean, weren't there a number of executives who were older in the company? And, Your Honor, that's true. And they were older and they were on the executive committee until after the reorganization in 2001. And after that date, there's two people left, the chairman and sole shareholder, the principal shareholder of the company, and Mr. Ewell. Three guys, Mr. Seary, Mr. Stinn, were terminated, albeit arguably for reasons other than age. But we submit that an inference can be drawn that it was because of age. And then Mr. Stewart had already announced his retirement. They effectively ñ So he's a neutral, basically. They had ñ well, they had effectively carried out the succession plan. They had replaced all senior managers over the age of 55 as of June of 2001, with the exception of the chairman and the president. I submit that that is direct evidence of discrimination and sufficient for me to take this case to the jury. That gives you two people. Did Mr. Stinn join this lawsuit? Does he have a separate suit? No, sir. Mr. Stinn is not in this lawsuit. Is he in any other lawsuit? Not that I'm aware of. Had Stinn managed or been responsible for the operation of the plant where the Listeria problem was? Remember, Mr. Stinn was the vice president of operations. Mr. Seary was the vice president of sales. So they fired the captain who was responsible for the plant. They did, and then they also fired ñ which, again, there's different inferences that can be drawn there. But I'm saying when they fired ñ One of the inferences is that he allowed Listeria to break out at the plant, so he got fired for it. But, Your Honor ñ But your other inference is just based on age, right? Yes, sir. But, Your Honor, again, you've got five members of management over the age of 55 before June of 2001. Okay. Afterwards, you've got two. All right? And Mr. Seary, whose sales had not suffered, they had gone up, and every year, in fact, had gone up in the years immediately prior to his termination. Was Mr. Stinn deposed in discovery? He was not. He was not. Okay. So we don't know what he was doing. All right. Thank you. The case just argued is submitted. Thank you. And we'll get your decision as soon as we can. And that leaves the last case on the calendar, Metropolitan Life Insurance Company v. Anita Pietrofita and others.
judges: Tallman, Bybee, Bea